(Slip Opinion) OCTOBER TERM, 2015 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BETTERMAN *v.* MONTANA

### CERTIORARI TO THE SUPREME COURT OF MONTANA

No. 14–1457. Argued March 28, 2016—Decided May 19, 2016

Petitioner Brandon Betterman pleaded guilty to bail jumping after failing to appear in court on domestic assault charges. He was then jailed for over 14 months awaiting sentence, in large part due to institutional delay. He was eventually sentenced to seven years' imprisonment, with four of the years suspended. Arguing that the 14-month gap between conviction and sentencing violated his speedy trial right, Betterman appealed, but the Montana Supreme Court affirmed the conviction and sentence, ruling that the Sixth Amendment's Speedy Trial Clause does not apply to postconviction, presentencing delay.

*Held*: The Sixth Amendment's speedy trial guarantee does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges. Pp. 3–11.

   (a) Criminal proceedings generally unfold in three discrete phases. First, the State investigates to determine whether to arrest and charge a suspect. Once charged, the suspect is presumed innocent until conviction upon trial or guilty plea. After conviction, the court imposes sentence. There are checks against delay geared to each particular phase. P. 3.

   (b) Statutes of limitations provide the primary protection against delay in the first stage, when the suspect remains at liberty, with the Due Process Clause safeguarding against fundamentally unfair prosecutorial conduct. *United States* v. *Lovasco*, 431 U. S. 783, 789. P. 3.

   (c) The Speedy Trial Clause right attaches when the second phase begins, that is, upon a defendant's arrest or formal accusation. *United States* v. *Marion*, 404 U. S. 307, 320–321. The right detaches upon conviction, when this second stage ends. Before conviction, the accused is shielded by the presumption of innocence, *Reed* v. *Ross*, 468 U. S. 1, 4, which the Speedy Trial Clause implements by minimizing

the likelihood of lengthy incarceration before trial, lessening the anxiety and concern associated with a public accusation, and limiting the effects of long delay on the accused's ability to mount a defense, *Marion*, 404 U. S., at 320. The Speedy Trial Clause thus loses force upon conviction.

This reading comports with the historical understanding of the speedy trial right. It "has its roots at the very foundation of our English law heritage," *Klopfer* v. *North Carolina*, 386 U. S. 213, 223, and it was the contemporaneous understanding of the Sixth Amendment's language that "accused" described a status preceding "convicted" and "trial" meant a discrete episode after which judgment (*i.e.,* sentencing) would follow. The Court's precedent aligns with the text and history of the Speedy Trial Clause. See *Barker* v. *Wingo,* 407 U. S. 514, 532–533. Just as the right to speedy trial does not arise prearrest, *Marion*, 404 U. S., at 320–322, adverse consequences of postconviction delay are outside the purview of the Speedy Trial Clause. The sole remedy for a violation of the speedy trial right— dismissal of the charges—fits the preconviction focus of the Clause, for it would be an unjustified windfall to remedy sentencing delay by vacating validly obtained convictions. This reading also finds support in the federal Speedy Trial Act of 1974 and numerous state analogs, which impose time limits for charging and trial but say nothing about sentencing. The prevalence of guilty pleas and the resulting scarcity of trials in today's justice system do not bear on the presumption-of-innocence protection at the heart of the Speedy Trial Clause. Moreover, a central feature of contemporary sentencing—the preparation and review of a presentence investigation report— requires some amount of wholly reasonable presentencing delay. Pp. 3–9.

(d) Although the Constitution's presumption-of-innocenceprotective speedy trial right is not engaged in the sentencing phase, statutes and rules offer defendants recourse. Federal Rule of Criminal Procedure 32(b)(1), for example, directs courts to "impose sentence without unnecessary delay." Further, as at the prearrest stage, due process serves as a backstop against exorbitant delay. Because Betterman advanced no due process claim here, however, the Court expresses no opinion on how he might fare under that more pliable standard. Pp. 9–11.

378 Mont. 182, 342 P. 3d 971, affirmed.

GINSBURG, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion, in which ALITO, J., joined. SOTOMAYOR, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 14–1457

## BRANDON THOMAS BETTERMAN, PETITIONER *v.* MONTANA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MONTANA

[May 19, 2016]

JUSTICE GINSBURG delivered the opinion of the Court.

The Sixth Amendment to the U. S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." Does the Sixth Amendment's speedy trial guarantee apply to the sentencing phase of a criminal prosecution? That is the sole question this case presents. We hold that the guarantee protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges. For inordinate delay in sentencing, although the Speedy Trial Clause does not govern, a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments. Petitioner Brandon Betterman, however, advanced in this Court only a Sixth Amendment speedy trial claim. He did not preserve a due process challenge. See Tr. of Oral Arg. 19. We, therefore, confine this opinion to his Sixth Amendment challenge.

## I

Ordered to appear in court on domestic assault charges, Brandon Betterman failed to show up and was therefore charged with bail jumping. 378 Mont. 182, 184, 342 P. 3d 971, 973 (2015). After pleading guilty to the bail-jumping charge, he was jailed for over 14 months awaiting sentence on that conviction. *Id.,* at 184–185, 342 P. 3d, at 973–974. The holdup, in large part, was due to institutional delay: the presentence report took nearly five months to complete; the trial court took several months to deny two presentence motions (one seeking dismissal of the charge on the ground of delay); and the court was slow in setting a sentencing hearing. *Id.,* at 185, 195, 342 P. 3d, at 973–974, 980. Betterman was eventually sentenced to seven years' imprisonment, with four of those years suspended. *Id.,* at 185, 342 P. 3d, at 974.

Arguing that the 14-month gap between conviction and sentencing violated his speedy trial right, Betterman appealed. The Montana Supreme Court affirmed his conviction and sentence, ruling that the Sixth Amendment's Speedy Trial Clause does not apply to postconviction, presentencing delay. *Id.,* at 188–192, 342 P. 3d, at 975–978.

We granted certiorari, 577 U. S. \_\_\_ (2015), to resolve a split among courts over whether the Speedy Trial Clause applies to such delay.[1] Holding that the Clause does not

——————

[1] Compare *Burkett* v. *Cunningham*, 826 F. 2d 1208, 1220 (CA3 1987); *Juarez-Casares* v. *United States*, 496 F. 2d 190, 192 (CA5 1974); *Ex parte Apicella*, 809 So. 2d 865, 869 (Ala. 2001); *Gonzales* v. *State*, 582 P. 2d 630, 632 (Alaska 1978); *Jolly* v. *State*, 358 Ark. 180, 191, 189 S. W. 3d 40, 45 (2004); *Trotter* v. *State*, 554 So. 2d 313, 316 (Miss. 1989), superseded by statute on other grounds, Miss. Code Ann. §99–35–101 (2008); *Commonwealth* v. *Glass*, 526 Pa. 329, 334, 586 A. 2d 369, 371 (1991); *State* v. *Leyva*, 906 P. 2d 910, 912 (Utah 1995); and *State* v. *Dean*, 148 Vt. 510, 513, 536 A. 2d 909, 912 (1987) (Speedy Trial Clause applies to sentencing delay), with *United States* v. *Ray*, 578

apply to delayed sentencing, we affirm the Montana Supreme Court's judgment.

## II

Criminal proceedings generally unfold in three discrete phases. First, the State investigates to determine whether to arrest and charge a suspect. Once charged, the suspect stands accused but is presumed innocent until conviction upon trial or guilty plea. After conviction, the court imposes sentence. There are checks against delay throughout this progression, each geared to its particular phase.

In the first stage—before arrest or indictment, when the suspect remains at liberty—statutes of limitations provide the primary protection against delay, with the Due Process Clause as a safeguard against fundamentally unfair prosecutorial conduct. *United States* v. *Lovasco*, 431 U. S. 783, 789 (1977); see *id.,* at 795, n. 17 (Due Process Clause may be violated, for instance, by prosecutorial delay that is "tactical" or "reckless" (internal quotation marks omitted)).

The Sixth Amendment's Speedy Trial Clause homes in on the second period: from arrest or indictment through conviction. The constitutional right, our precedent holds, does not attach until this phase begins, that is, when a defendant is arrested or formally accused. *United States* v. *Marion*, 404 U. S. 307, 320–321 (1971). Today we hold that the right detaches upon conviction, when this second stage ends.[2]

––––––––––

F. 3d 184, 198–199 (CA2 2009); *State* v. *Drake*, 259 N. W. 2d 862, 866 (Iowa 1977), abrogated on other grounds by *State* v. *Kaster*, 469 N. W. 2d 671, 673 (Iowa 1991); *State* v. *Pressley*, 290 Kan. 24, 29, 223 P. 3d 299, 302 (2010); *State* v. *Johnson*, 363 So. 2d 458, 460 (La. 1978); 378 Mont. 182, 192, 342 P. 3d 971, 978 (2015) (case below); and *Ball* v. *Whyte*, 170 W. Va. 417, 418, 294 S. E. 2d 270, 271 (1982) (Speedy Trial Clause does not apply to sentencing delay).

[2] We reserve the question whether the Speedy Trial Clause applies to bifurcated proceedings in which, at the sentencing stage, facts that

Prior to conviction, the accused is shielded by the presumption of innocence, the "bedrock[,] axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." *Reed* v. *Ross*, 468 U. S. 1, 4 (1984) (internal quotation marks omitted). The Speedy Trial Clause implements that presumption by "prevent[ing] undue and oppressive incarceration prior to trial, . . . minimiz[ing] anxiety and concern accompanying public accusation[,] and . . . limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself." *Marion*, 404 U. S., at 320 (internal quotation marks omitted). See also *Barker* v. *Wingo*, 407 U. S. 514, 532–533 (1972). As a measure protecting the presumptively innocent, the speedy trial right—like other similarly aimed measures—loses force upon conviction. Compare *In re Winship*, 397 U. S. 358, 364 (1970) (requiring "proof beyond a reasonable doubt of every fact necessary to constitute the crime"), with *United States* v. *O'Brien*, 560 U. S. 218, 224 (2010) ("Sentencing factors . . . can be proved . . . by a preponderance of the evidence."). Compare also 18 U. S. C. §3142(b) (bail presumptively available for accused awaiting trial) with §3143(a) (bail presumptively unavailable for those convicted awaiting sentence).

Our reading comports with the historical understanding. The speedy trial right, we have observed, "has its roots at the very foundation of our English law heritage. Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215) . . . ." *Klopfer* v. *North Carolina*, 386 U. S. 213, 223 (1967). Regarding the Framers' comprehension of the right as it existed at the

--------

could increase the prescribed sentencing range are determined (*e.g.,* capital cases in which eligibility for the death penalty hinges on aggravating factor findings). Nor do we decide whether the right reattaches upon renewed prosecution following a defendant's successful appeal, when he again enjoys the presumption of innocence.

founding, we have cited Sir Edward Coke's Institutes of the Laws of England. See *id.,* at 223–225, and nn. 8, 12–14, 18. Coke wrote that "the *innocent* shall not be worn and wasted by long imprisonment, but . . . speedily come to his *tria[l].*" 1 E. Coke, Second Part of the Institutes of the Laws of England 315 (1797) (emphasis added).

Reflecting the concern that a presumptively innocent person should not languish under an unresolved charge, the Speedy Trial Clause guarantees "the *accused*" "the right to a speedy . . . *trial.*" U. S. Const., Amdt. 6 (emphasis added). At the founding, "accused" described a status preceding "convicted." See, *e.g.,* 4 W. Blackstone, Commentaries on the Laws of England 322 (1769) (commenting on process in which "persons *accused* of felony . . . were tried . . . and *convicted*" (emphasis added)). And "trial" meant a discrete episode after which judgment (*i.e.,* sentencing) would follow. See, *e.g., id.,* at 368 ("We are now to consider the next stage of criminal prosecution, after trial and conviction are past . . . : which is that of *judgment.*").[3]

This understanding of the Sixth Amendment language—"accused" as distinct from "convicted," and "trial" as separate from "sentencing"—endures today. See, *e.g.,* Black's Law Dictionary 26 (10th ed. 2014) (defining "accused" as "a person who has been *arrested* and brought before a magistrate or who has been formally *charged*" (emphasis added)); Fed. Rule Crim. Proc. 32 (governing "Sentencing and Judgment," the rule appears in the chap-

––––––––––

[3] As Betterman points out, at the founding, sentence was often imposed promptly after rendition of a verdict. Brief for Petitioner 24–26. But that was not invariably the case. For the court's "own convenience, or on cause shown, [sentence could be] postpone[d] . . . to a future day or term." 1 J. Bishop, Criminal Procedure §1291, p. 767 (3d ed. 1880) (footnote omitted). See also 1 J. Chitty, A Practical Treatise on the Criminal Law 481 (1819) ("The sentence . . . is usually given immediately after the conviction, but the court may adjourn to another day and then give judgment.").

ter on "Post-Conviction Procedures," which follows imme-
diately after the separate chapter headed "Trial").[4]

This Court's precedent aligns with the text and history
of the Speedy Trial Clause. Detaining the accused pretrial,
we have said, disadvantages him, and the imposition is
"especially unfortunate" as to those "ultimately found to be
innocent." *Barker*, 407 U. S., at 532–533. And in *Marion*,
404 U. S., at 320, addressing "the major evils protected
against by the speedy trial guarantee," we observed: "Ar-
rest is a public act that may seriously interfere with the
defendant's liberty, whether he is free on bail or not, and
that may disrupt his employment, drain his financial
resources, curtail his associations, subject him to public
obloquy, and create anxiety in him, his family and his
friends." We acknowledged in *Marion* that even pre-
arrest—a stage at which the right to a speedy trial does
not arise—the passage of time "may impair memories,
cause evidence to be lost, deprive the defendant of wit-
nesses, and otherwise interfere with his ability to defend
himself." *Id.,* at 321. Nevertheless, we determined, "this
possibility of prejudice at trial is not itself sufficient rea-
son to wrench the Sixth Amendment from its proper [ar-
rest or charge triggered] context." *Id.,* at 321–322. Ad-
verse consequences of postconviction delay, though subject
to other checks, see *infra*, at 10–11, are similarly outside
the purview of the Speedy Trial Clause.[5]

––––––––––

[4] We do not mean to convey that provisions of the Sixth Amendment
protecting interests other than the presumption of innocence are
inapplicable to sentencing. In this regard, we have held that the right
to defense counsel extends to some postconviction proceedings. See
*Mempa* v. *Rhay*, 389 U. S. 128, 135–137 (1967).

[5] *Smith* v. *Hooey*, 393 U. S. 374 (1969), on which Betterman relies, is
not to the contrary. There we concluded that a defendant, though
already convicted and imprisoned on one charge, nevertheless has a
right to be speedily brought to trial on an unrelated charge. *Id.,* at 378.
"[T]here is reason to believe," we explained in *Smith*, "that an outstand-
ing untried charge (of which even a convict may, of course, be innocent)

The sole remedy for a violation of the speedy trial right—dismissal of the charges, see *Strunk* v. *United States*, 412 U. S. 434, 440 (1973); *Barker*, 407 U. S., at 522—fits the preconviction focus of the Clause. It would be an unjustified windfall, in most cases, to remedy sentencing delay by vacating validly obtained convictions. Betterman concedes that a dismissal remedy ordinarily would not be in order once a defendant has been convicted. See Tr. of Oral Arg. 5–6; cf. *Bozza* v. *United States*, 330 U. S. 160, 166 (1947) ("[A]n error in passing the sentence" does not permit a convicted defendant "to escape punishment altogether.").[6]

The manner in which legislatures have implemented the speedy trial guarantee matches our reading of the Clause. Congress passed the Speedy Trial Act of 1974, 18 U. S. C. §3161 *et seq.*, "to give effect to the sixth amendment right." *United States* v. *MacDonald*, 456 U. S. 1, 7, n. 7 (1982) (quoting S. Rep. No. 93–1021, p. 1 (1974)). "The more stringent provisions of the Speedy Trial Act have mooted much litigation about the requirements of the Speedy Trial Clause . . . ." *United States* v. *Loud Hawk*, 474 U. S. 302, 304, n. 1 (1986) (citation omitted). With certain exceptions, the Act directs—on pain of dismissal of the charges, §3162(a)—that no more than 30 days pass between arrest and indictment, §3161(b), and that no more than 70 days pass between indictment and trial, §3161(c)(1). The Act says nothing, however, about the

——————

can have fully as depressive an effect upon a prisoner as upon a person who is at large." *Id.,* at 379. *Smith* is thus consistent with comprehension of the Speedy Trial Clause as protective of the presumptively innocent.

[6] Betterman suggests that an appropriate remedy for the delay in his case would be reduction of his sentence by 14 months—the time between his conviction and sentencing. See Tr. of Oral Arg. 6. We have not read the Speedy Trial Clause, however, to call for a flexible or tailored remedy. Instead, we have held that violation of the right demands termination of the prosecution.

period between conviction and sentencing, suggesting that
Congress did not regard that period as falling within the
Sixth Amendment's compass. Numerous state analogs
similarly impose precise time limits for charging and trial;
they, too, say nothing about sentencing.[7]

Betterman asks us to take account of the prevalence of
guilty pleas and the resulting scarcity of trials in today's
justice system. See *Lafler* v. *Cooper*, 566 U. S. ___, ___
(2012) (slip op., at 11) ("[C]riminal justice today is for the
most part a system of pleas, not a system of trials."). The
sentencing hearing has largely replaced the trial as the
forum for dispute resolution, Betterman urges. Therefore,
he maintains, the concerns supporting the right to a
speedy trial now recommend a speedy sentencing hear-
ing. The modern reality, however, does not bear on the
presumption-of-innocence protection at the heart of the
Speedy Trial Clause. And factual disputes, if any there
be, at sentencing, do not go to the question of guilt;
they are geared, instead, to ascertaining the proper sen-
tence within boundaries set by statutory minimums and
maximums.

Moreover, a central feature of contemporary sentencing

---

[7] See, *e.g.,* Alaska Rule Crim. Proc. 45 (2016); Ark. Rules Crim. Proc.
28.1 to 28.3 (2015); Cal. Penal Code Ann. §1382 (West 2011); Colo. Rev.
Stat. §18–1–405 (2015); Conn. Rules Crim. Proc. 43–39 to 43–42 (2016);
Fla. Rule Crim. Proc. 3.191 (2016); Haw. Rule Crim. Proc. 48 (2016); Ill.
Comp. Stat., ch. 725, §5/103–5 (West 2014); Ind. Rule Crim. Proc. 4
(2016); Iowa Rule Crim. Proc. 2.33 (2016); Kan. Stat. Ann. §22–3402
(2014 Cum. Supp.); La. Code Crim. Proc. Ann., Art. 701 (West Cum.
Supp. 2016); Mass. Rule Crim. Proc. 36 (2016); Neb. Rev. Stat. §§29–
1207, 29–1208 (2008); Nev. Rev. Stat. §178.556 (2013); N. Y. Crim.
Proc. Law Ann. §30.30 (West Cum. Supp. 2016); Ohio Rev. Code Ann.
§§2945.71 to 2945.73 (Lexis 2014); Ore. Rev. Stat. §§135.745, 135.746,
135.748, 135.750, 135.752 (2015); Pa. Rule Crim. Proc. 600 (2016); S. D.
Codified Laws §23A–44–5.1 (Cum. Supp. 2015); Va. Code Ann. §19.2–
243 (2015); Wash. Rule Crim. Proc. 3.3 (2016); Wis. Stat. §971.10
(2011–2012); Wyo. Rule Crim. Proc. 48 (2015).

in both federal and state courts is preparation by the probation office, and review by the parties and the court, of a presentence investigation report. See 18 U. S. C. §3552; Fed. Rule Crim. Proc. 32(c)–(g); 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §26.5(b), pp. 1048–1049 (4th ed. 2015) (noting reliance on presentence reports in federal and state courts). This aspect of the system requires some amount of wholly reasonable presentencing delay.[8] Indeed, many—if not most— disputes are resolved, not at the hearing itself, but rather through the presentence-report process. See N. Demleitner, D. Berman, M. Miller, & R. Wright, Sentencing Law and Policy 443 (3d ed. 2013) ("Criminal justice is far more commonly negotiated than adjudicated; defendants and their attorneys often need to be more concerned about the charging and plea bargaining practices of prosecutors and the presentence investigations of probation offices than . . . about the sentencing procedures of judges or juries."); cf. Bierschbach & Bibas, Notice-and-Comment Sentencing, 97 Minn. L. Rev. 1, 15 (2012) ("[T]oday's sentencing hearings . . . rubber-stamp plea-bargained sentences.").

As we have explained, at the third phase of the criminal-justice process, *i.e.,* between conviction and sentencing, the Constitution's presumption-of-innocence-protective speedy trial right is not engaged.[9] That does

————————

[8] "In federal prosecutions," the Solicitor General informs us, "the median time between conviction and sentencing in 2014 was 99 days." Brief for United States as *Amicus Curiae* 31, n. 5. A good part of this time no doubt was taken up by the drafting and review of a presentence report. See Fed. Rule Crim. Proc. 32(c)–(g) (detailing presentence-report process).

[9] It is true that during this period the defendant is often incarcerated. See, *e.g.,* §3143(a) (bail presumptively unavailable for convicted awaiting sentence). Because postconviction incarceration is considered punishment for the offense, however, a defendant will ordinarily earn time-served credit for any period of presentencing detention. See §3585(b); A. Campbell, Law of Sentencing §9:28, pp. 444–445, and n. 4

not mean, however, that defendants lack any protection against undue delay at this stage. The primary safeguard comes from statutes and rules. The federal rule on point directs the court to "impose sentence without unnecessary delay." Fed. Rule Crim. Proc. 32(b)(1). Many States have provisions to the same effect,[10] and some States prescribe numerical time limits.[11] Further, as at the prearrest stage, due process serves as a backstop against exorbitant delay. See *supra,* at 3. After conviction, a defendant's due process right to liberty, while diminished, is still present.

_____

(3d ed. 2004) ("[State c]rediting statutes routinely provide that any period of time during which a person was incarcerated in relation to a given offense be counted toward satisfaction of any resulting sentence."). That such detention may occur in a local jail rather than a prison is of no constitutional moment, for a convicted defendant has no right to serve his sentence in the penal institution he prefers. See *Meachum* v. *Fano*, 427 U. S. 215, 224–225 (1976).

[10] See, *e.g.,* Alaska Rule Crim. Proc. 32(a) (2016); Colo. Rule Crim. Proc. 32(b)(1) (2015); Del. Super. Ct. Crim. Rule 32(a)(1) (2003); Fla. Rule Crim. Proc. 3.720 (2016); Haw. Rule Penal Proc. 32(a) (2016); Kan. Stat. Ann. §22–3424(c) (2014 Cum. Supp.); Ky. Rule Crim. Proc. 11.02(1) (2016); La. Code Crim. Proc. Ann., Art. 874 (West 2016); Me. Rule Crim. Proc. 32(a)(1) (2015); Mass. Rule Crim. Proc. 28(b) (2016); Mich. Ct. Rule 6.425(E)(1) (2011); Mo. Sup. Ct. Rule 29.07(b)(1) (2011); Mont. Code Ann. §46–18–115 (2015); Nev. Rev. Stat. §176.015(1) (2013); N. H. Rule Crim. Proc. 29(a)(1) (2016); N. J. Ct. Rule 3:21–4(a) (2016); N. Y. Crim. Proc. Law Ann. §380.30(1) (West Cum. Supp. 2016); N. D. Rule Crim. Proc. 32(a)(1) (2011); Ohio Rule Crim. Proc. 32(A) (2013); R. I. Super. Ct. Rule 32(a)(1) (2015); S. D. Codified Laws §23A–27–1 (Cum. Supp. 2015); Vt. Rule Crim. Proc. 32(a)(1) (2010); Va. Sup. Ct. Rule 3A:17.1(b) (2012); W. Va. Rule Crim. Proc. 32(a) (2006); Wyo. Rule Crim. Proc. 32(c)(1) (2015).

[11] See, *e.g.,* Ariz. Rule Crim. Proc. 26.3(a)(1) (2011); Ark. Rule Crim. Proc. 33.2 (2015); Cal. Penal Code Ann. §1191 (West 2015); Ind. Rule Crim. Proc. 11 (2016); N. M. Rule Crim. Proc. 5–701(B) (2016); Ore. Rev. Stat. §137.020(3) (2015); Pa. Rule Crim. Proc. 704(A)(1) (2016); Tenn. Code Ann. §40–35–209(a) (2014); Utah Rule Crim. Proc. 22(a) (2015); Wash. Rev. Code §9.94A.500(1) (2016 Cum. Supp.). These sentencing provisions are separate from state analogues to the Speedy Trial Act. See *supra,* at 8, and n. 7.

He retains an interest in a sentencing proceeding that is fundamentally fair.  But because Betterman advanced no due process claim here, see *supra,* at 1, we express no opinion on how he might fare under that more pliable standard.  See, *e.g., United States* v. *$8,850,* 461 U. S. 555, 562–565 (1983).[12]

\*     \*     \*

The course of a criminal prosecution is composed of discrete segments.  During the segment between accusation and conviction, the Sixth Amendment's Speedy Trial Clause protects the presumptively innocent from long enduring unresolved criminal charges.  The Sixth Amendment speedy trial right, however, does not extend beyond conviction, which terminates the presumption of innocence.  The judgment of the Supreme Court of Montana is therefore

*Affirmed.*

---

[12] Relevant considerations may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–1457

_____

## BRANDON THOMAS BETTERMAN, PETITIONER *v.* MONTANA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
MONTANA

[May 19, 2016]

JUSTICE THOMAS, with whom JUSTICE ALITO joins,
concurring.

I agree with the Court that the Sixth Amendment's
Speedy Trial Clause does not apply to sentencing proceed-
ings, except perhaps to bifurcated sentencing proceedings
where sentencing enhancements operate as functional
elements of a greater offense. See *ante,* at 2–3, and n. 2. I
also agree with the Court's decision to reserve judgment
on whether sentencing delays might violate the Due Pro-
cess Clause. *Ante,* at 11. Brandon Betterman's counsel
repeatedly disclaimed that he was raising in this Court a
challenge under the Due Process Clause. See Tr. of Oral
Arg. 7–8 ("We haven't included that. We didn't include
that in the question presented, Your Honor"); *id.,* at 8
("[W]e are not advancing that claim here"); *id.,* at 19
("[W]e didn't preserve a—a due process challenge. Our
challenge is solely under the Sixth Amendment").

We have never decided whether the Due Process Clause
creates an entitlement to a reasonably prompt sentencing
hearing. Today's opinion leaves us free to decide the
proper analytical framework to analyze such claims if and
when the issue is properly before us.

JUSTICE SOTOMAYOR suggests that, for such claims, we
should adopt the factors announced in *Barker* v. *Wingo*,
407 U. S. 514, 530–533 (1972). *Post,* at 2 (concurring

opinion). I would not prejudge that matter. The factors listed in *Barker* may not necessarily translate to the delayed sentencing context. The Due Process Clause can be satisfied where a State has adequate procedures to redress an improper deprivation of liberty or property. See *Parratt* v. *Taylor*, 451 U. S. 527, 537 (1981). In unusual cases where trial courts fail to sentence a defendant within a reasonable time, a State might fully satisfy due process by making traditional extraordinary legal remedies, such as mandamus, available. Or, much like the federal Speedy Trial Act regulates trials, see 18 U. S. C. §3161, a State might remedy improper sentencing delay by statute.* And a person who sleeps on these remedies, as Betterman did, may simply have no right to complain that his sentencing was delayed. We should await a proper presentation, full briefing, and argument before taking a position on this issue.

The Court thus correctly "express[es] no opinion on how [Betterman] might fare" under the Due Process Clause. *Ante,* at 11.

_____

*Montana law, for example, secures the right to a prompt sentencing hearing. See Mont. Code Ann. §46–18–101(3)(a) (2015) ("Sentencing and punishment must be certain, timely, consistent, and understandable"); §46–18–102(3)(a) ("[I]f the verdict or finding is guilty, sentence must be pronounced and judgment rendered within a reasonable time"); §46–18–115 ("[T]he court shall conduct a sentencing hearing, without unreasonable delay").

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–1457

_____

## BRANDON THOMAS BETTERMAN, PETITIONER *v.* MONTANA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF MONTANA

[May 19, 2016]

JUSTICE SOTOMAYOR, concurring.

I agree with the Court that petitioner cannot bring a claim under the Speedy Trial Clause for a delay between his guilty plea and his sentencing. As the majority notes, however, a defendant may have "other recourse" for such a delay, "including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Ante,* at 1. The Court has no reason to consider today the appropriate test for such a Due Process Clause challenge because petitioner has forfeited any such claim. See Tr. of Oral Arg. 19. I write separately to emphasize that the question is an open one.

The Due Process Clause is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer*, 408 U. S. 471, 481 (1972). This Court thus uses different tests to consider whether different kinds of delay run afoul of the Due Process Clause. In evaluating whether a delay in instituting judicial proceedings following a civil forfeiture violated the Due Process Clause, the Court applied the test from *Barker* v. *Wingo*, 407 U. S. 514 (1972)—the same test that the Court applies to violations of the Speedy Trial Clause. See *United States* v. *$8,850*, 461 U. S. 555, 564 (1983). Under the *Barker* test, courts consider four factors—the length of the delay, the reason for the delay, the defendant's asser-

tion of his right, and prejudice to the defendant. *Ibid.* None of the four factors is "either necessary or sufficient," and no one factor has a "talismanic qualit[y]." *Barker*, 407 U. S., at 533.

The Montana Supreme Court did not use the *Barker* test in evaluating petitioner's Due Process Clause claim. 378 Mont. 182, 193–194, 342 P. 3d 971, 979 (2015). But it seems to me that the *Barker* factors capture many of the concerns posed in the sentencing delay context and that because the *Barker* test is flexible, it will allow courts to take account of any differences between trial and sentencing delays. See 407 U. S., at 531. The majority of the Circuits in fact use the *Barker* test for that purpose. See *United States* v. *Sanders*, 452 F. 3d 572, 577 (CA6 2006) (collecting cases).

In the appropriate case, I would thus consider the correct test for a Due Process Clause delayed sentencing challenge.