Filed 12/19/25  P. v. Acuna CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>GONZALO ACUNA,<br><br>      Defendant and Appellant. | C102180<br><br>(Super. Ct. No. 95F01592) |

In 1996, a jury found defendant Gonzalo Acuna guilty of robbery and first degree murder and found true the robbery-murder special circumstance and the personal firearm use enhancement.  The trial court sentenced defendant to an indeterminate term of life without the possibility of parole plus 10 years in prison.

Defendant now appeals from the trial court's 2024 order denying his resentencing petition after an evidentiary hearing.  He contends:  (1) the trial court violated his federal and state due process rights by giving preclusive effect to the jury's personal firearm use enhancement true finding; (2) the trial court's finding that he was still guilty of murder

1

under current law was not supported by substantial evidence; and (3) the People have forfeited their eligibility challenge and, in any event, he is entitled to relief as a matter of law.

The People concede that the trial court erred in applying issue preclusion to the jury's personal firearm use true finding but argue the error was harmless.

We conclude that (1) defendant is eligible for relief because the jury's robbery-murder special circumstance true finding did not necessarily mean it concluded defendant aided and abetted the killing; (2) Penal Code section 1172.6 creates a liberty interest, and the trial court's erroneous application of issue preclusion violated defendant's federal due process rights; (3) the error was harmless beyond a reasonable doubt because the trial court conducted a separate totality of the evidence review including credibility determinations in finding defendant was the actual killer; and (4) based on the totality of the evidence, the People have presented substantial evidence showing defendant was the actual killer. The trial court's order is affirmed.

Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Trial*

One afternoon in 1995, brothers Christopher and Allen pulled into a gas station convenience store parking lot to ask for directions. As soon as they stopped, Christopher saw three men armed with guns running out of the convenience store toward a red car and drive away. Allen wrote down the license plate number.

A police officer arrived at the convenience store and found Boravong Phanvongsa's body, one bullet casing in the open cash register drawer, and one bullet casing on the floor near the sales counter. A bullet was also found on the floor behind the sales counter. Christopher told the officer that the three men fled in a red car and gave her the license plate number.

2

Police officers discovered that the registered owner of the red car was defendant's mother-in-law and waited near her house. They approached a red car as it pulled into the driveway and saw defendant get out from the driver side and codefendant Ivan Galvan from the passenger side. The officers found a Cobray pistol on the ground under the driver side door and a Lorcin pistol on the ground under the passenger side door. They also found an empty magazine clip fitting the Cobray pistol in defendant's pocket. Defendant's friend identified the Cobray as defendant's gun, and Galvan testified that defendant had the Cobray with him on the day of the killing.

Phanvongsa suffered two gunshots: one to the back of his head and one that entered and exited his chest before entering and exiting his arm. Both gunshots caused Phanvongsa's death. A bullet was found in Phanvongsa's throat. The People's expert witness determined that the bullet in Panvongsa's throat and one of the bullet casings found inside the convenience store were fired from the Cobray, and the bullet found on the floor behind the sales counter was fired from the Lorcin.

Galvan testified that on the day of the killing, he, defendant, and two other men went to test Galvan's newly purchased Lorcin near a river. After they fired some shots by the river, defendant drove the group away with Galvan in the front passenger seat and the other two men in the back seat. Defendant and Galvan put their guns under their respective seats but the guns were accessible from both the front and back seats. The group went to get beer from the convenience store but neither Galvan nor defendant went inside. Galvan did not see the two men take the guns when they went inside the convenience store. But when they returned, Galvan saw one of them put something under the driver seat. Defendant and Galvan dropped the two men off before they returned to defendant's mother-in-law's house.

Both Allen and Christopher picked out Galvan from a photo lineup as one of the men they saw leaving the convenience store. Christopher initially testified that Galvan got in the passenger side of the red car. But he later testified that he saw Galvan carrying

3

the Cobray, and that the individual carrying the Cobray got in the driver side. Christopher admitted that his "eyes were more on the guns than they were the individuals" and that he did not remember which side of the car which person got in.

The trial court gave the jury the following instruction on the robbery-murder special circumstance: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: [¶] That the defendants were engaged in the commission of a robbery. [¶] . . . [¶] If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider or abett[o]r, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with the intent to kill aided and abetted an actor in commission of the murder in the first degree in order to find the special circumstance to be true. . . . [¶] On the other hand if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

As to first degree felony murder, the jury was instructed: "The unlawful killing of a human being . . . which occurs [during the commission . . .] of [robbery] is murder of the first degree when the perpetrator had the specific intent to commit such crime." And "[if] a human being is killed by any one of several persons engaged in the commission . . . of robbery, all persons, who either directly and actively commit the act constituting such crime . . . are guilty of murder of the first degree."

In closing, defense counsel explained to the jury the difference between felony murder and robbery-murder special circumstance: "To find somebody guilty of felony murder, a person does not have to have the intent to kill. In order to find special circumstance you have got to find that [defendant] intended this man's death." The prosecutor also told the jury even if it did not find defendant shot Phanvongsa, it could still find true the robbery-murder special circumstance if it found defendant "aided and abetted the murder with the intent to have a murder committed."

4

The jury found defendant guilty of robbery (§ 211) and first degree murder (§ 187, subd. (a)) and found true the robbery-murder special circumstance allegation as to first degree murder (§ 190.2, subd. (a)(17)). It also found true that defendant personally used a firearm in committing both crimes (§ 12022.5, subd. (a)). The trial court sentenced defendant to an indeterminate term of life without the possibility of parole plus 10 years in prison.

B.     *Senate Bill No. 1437*

In 2018, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended section 189, subdivision (e) on felony murder and added section 1172.6 which provides a procedure for those convicted of murder or felony murder and who could not be convicted under the new law to petition for resentencing. (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Under section 1172.6, once a petitioner establishes his prima facie entitlement to relief, the prosecution bears the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder or felony murder under the new law. (§ 1172.6, subds. (c), (d)(3).)

C.     *Resentencing*

In 2022, defendant filed a petition for resentencing under section 1172.6 and the trial court issued an order to show cause in January 2023. At the 2024 evidentiary hearing, defendant denied ever entering the convenience store.

The trial court denied the petition, finding that the existing record established beyond a reasonable doubt that defendant was the actual killer. In so finding, the trial court stated it was bound by the jury's firearm use finding. The trial court then went through the evidence and made credibility determinations. The trial court noted it was undisputed that the Cobray was defendant's gun, that defendant carried the Cobray on the day of the killing, that defendant drove after the killing, and that a bullet fired from the Cobray killed Phanvongsa. It further credited Christopher's testimony that the person carrying the Cobray got in the driver side of the red car and discredited defendant's and Galvan's testimonies. After recounting all this evidence, the trial court stated it "finds the

5

totality of the evidence proves beyond a reasonable doubt that [defendant] was the actual killer . . . ."

Defendant timely appeals.

DISCUSSION

I

*Eligibility for Relief*

The People contend that the jury's robbery-murder special circumstance true finding renders defendant ineligible for relief as a matter of law because the jury necessarily found defendant either was the actual killer or aided and abetted the robbery with the intent to kill. We disagree and conclude the new felony murder rule's actus reus for aider and abettor liability is aiding the killing.

*A.*      *Additional Background*

In July 2024, the People advised the trial court of new significant authority on issue preclusion, *People v. Rodriguez* (2024) 103 Cal.App.5th 451. In their supplemental brief, the People raised another new argument that defendant was also ineligible for relief as a matter of law, citing *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted July 17, 2024, S284751 (*Morris*). The People stated they did not seek to reopen the prima facie proceeding but asked the trial court to find defendant ineligible for relief at the evidentiary stage. Defendant did not seek to file a supplemental brief addressing *Morris*.

At the evidentiary hearing, the People acknowledged that the trial court rejected their eligibility challenge by issuing the order to show cause but proceeded to argue defendant was ineligible for relief as a matter of law. Defendant did not address the eligibility issue at the hearing.

*B.*      *Analysis*

As an initial matter, we reject defendant's contention that the People forfeited this issue. The People argued defendant was ineligible for relief both in their supplemental

6

brief and at the evidentiary hearing, citing new authority published after the issuance of the order to show cause. Although the People did not seek to reopen the prima facie proceeding, they sought denial of the petition on the basis of ineligibility—a result functionally equivalent to a denial at the prima facie stage. Defendant had the opportunity to but did not respond to the eligibility issue. We thus conclude the People preserved the issue for review. We now turn to defendant's eligibility for relief under section 1172.6.

The bar for establishing a prima facie case for resentencing under section 1172.6 is very low. (*People v. Lewis, supra*, 11 Cal.5th at p. 972.) The trial court must issue an order to show cause and conduct an evidentiary hearing unless the record of conviction conclusively establishes the defendant is ineligible for resentencing as a matter of law. (*Id.* at p. 971.) To find a defendant ineligible for resentencing, "the record of conviction must establish the jury made all of the findings necessary to support a conviction for murder or attempted murder under current law. [Citation.] This requires proof the jury found the defendant harbored the necessary intent *and* he committed the necessary act or acts to be guilty under a presently valid theory of liability." (*People v. Kelly* (2024) 105 Cal.App.5th 162, 170, review granted Nov. 26, 2024, S287341 (*Kelly*).)

Courts are split on interpreting the actus reus requirement for an aider and abettor under the new felony murder rule. *Morris* held "the actus reus . . . is simply aiding the enumerated felony." (*Morris, supra*, 100 Cal.App.5th at p. 1026.) *Kelly* held the required actus reus is aiding in the murderous act. (*Kelly, supra*, 105 Cal.App.5th at p. 167.) We agree with *Kelly*.

We begin by examining the plain language of section 189, subdivision (e). As amended, the statute provides: "A participant in the perpetration . . . of a felony . . . in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. (2) The person was not the actual killer, but, with the intent to kill, aided, abetted . . . the actual killer in the commission of murder in the first degree.

7

(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life." Murder is further defined as the unlawful killing of a human being with malice aforethought and murder committed during a robbery is first degree murder. (§§ 188, subd. (a), 189, subd. (a).) Read together, the plain language of these provisions requires a nonkiller defendant to aid in the unlawful killing committed during a robbery with the intent to kill. (*Kelly, supra*, 105 Cal.App.5th at p. 172.) The plain meaning of the statutory language controls. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.)

*Morris* departs from the plain meaning of section 189, subdivision (e)(2) by holding that its requisite actus reus "is simply aiding the enumerated felony." (*Morris, supra*, 100 Cal.App.5th at p. 1026.) Such a holding impermissibly broadens the statute's "scope by reading into it language it does not contain [and] by reading out of it language it does." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253; accord, *Morris,* at pp. 1031-1032 (Moore, J., dissenting).)

Moreover, the Legislature adopted Senate Bill No. 1437 to, among other things, narrow the felony murder rule. (See Stats. 2018, ch. 1015, § 1, subd. (f).) Under the former felony murder rule, "[a]ll persons aiding or abetting the commission of burglary or robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design." (*People v. Dickey* (2005) 35 Cal.4th 884, 900.) The Legislature narrowed the rule as it applies to nonkiller aiders and abettors by requiring they aid and abet (1) the "actual killer" and (2) with the intent to kill. (§ 189, subd. (e)(2).)

We must give effect to the term "actual killer" as it was chosen by the Legislature. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 ["the words the Legislature chose are the best indicators of its intent"]; accord, *Morris, supra*, 100 Cal.App.5th at p. 1033 (Moore, J., dissenting).) This is especially true when the felony-murder special circumstance statute, amended in the

8

same year as section 189, requires only that a nonkiller defendant aids "any actor" in the commission of first degree murder with the intent to kill.  (§ 190.2, subd. (c); Sen. Bill No. 1494 (2017-2018 Reg. Sess.) § 43, subd. (c).)  When "the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."  (*People v. Trevino* (2001) 26 Cal.4th 237, 242.)  By requiring the nonkiller defendant to aid the actual killer instead of any actor, the Legislature meant to "require a closer nexus between the defendant's actions and the actual killing" than is required in the felony murder special circumstance.  (*Kelly, supra*, 105 Cal.App.5th at p. 174.)  Also, if the Legislature wanted the actus reus to be aiding the underlying felony, it could have said so as it did in subdivision (e)(3).  Instead, it required the defendant to aid in the commission of first degree murder where a killing necessarily took place.  (*Kelly,* at p. 172.)

Here, the jury was instructed that to find the robbery-murder special circumstance true, it must find defendant either was the actual killer or aided and abetted an actor in the commission of first degree murder, the latter presumably with the intent to kill.[1]  It was

---

[1]   As noted, the court gave the jury the following instruction on the robbery-murder special circumstance:  "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true:  [¶]  That the defendants were engaged in the commission of a robbery.  [¶] . . . [¶]  If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider or abett[o]r, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with intent to kill aided and abetted [an actor in] commission of the murder in the first degree, in order to find the special circumstance to be true.  [¶]  On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

Our Supreme Court has held this instruction is ambiguous:  "The flaw in this instruction . . . is that it failed to instruct the jury explicitly that, under [then-existing] law, an aider and abettor must have had the intent that the victim be killed in order for the special circumstance allegation to be true. [Citation.] The jury was told that if it

9

further instructed that all participants of a robbery would be guilty of first degree murder if any one of them killed during the robbery. Thus, by finding true the robbery-murder special circumstance, the jury did not necessarily find defendant aided and abetted the killing, but merely that he aided and abetted the robbery where the killing occurred. The actus reus requirement under section 189, subdivision (e)(2), i.e., aiding and abetting the killing, was "never considered, deliberated upon, or found true by the jury." (*Morris, supra*, 100 Cal.App.5th at p. 1032 (Moore, J., dissenting).) Defendant is eligible for relief.

## II

### *Issue Preclusion, Due Process Violation, and Substantial Evidence*

Defendant contends, and the People concede, the trial court erred by applying issue preclusion to the jury's personal firearm use enhancement true finding at the section 1172.6 evidentiary hearing. Defendant further argues that the trial court's error violated his federal due process rights by denying him independent fact finding provided by section 1172.6, subdivision (d)(3). We agree the trial court erred by applying issue preclusion but find the error harmless beyond a reasonable doubt because the trial court

---

determined one of the defendants was the actual killer, intent to kill was not required, and that if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill in order to make a true finding. The jury, however, was not informed what was required in the event the jury determined that a particular defendant was an aider and abettor. The omission of this third alternative made the instruction ambiguous." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 180-181, fn. omitted.) However, our Supreme Court also perceived "no reasonable likelihood the jury was confused" there because it "*could* draw from the instruction as a whole the inference that an aider and abettor was required to have an intent to kill" and "the prosecutor presented a correct and complete statement of the law . . . ." (*Id.* at p. 182.) Similarly here, both defense counsel and the prosecutor told the jury that if it found defendant was an aider and abettor, it must also find defendant acted with the intent to kill to find true the robbery-murder special circumstance. We thus assume, without deciding, that the jury found defendant acted with the intent to kill.

10

based the actual killer finding on the totality of the evidence analysis that went beyond the jury's personal firearm use finding.

*A.     Federal Due Process*

We first determine whether the trial court's error violated defendant's federal due process rights.  Courts have uniformly held that a section 1172.6 petition is an act of legislative lenity, not a criminal prosecution.  (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1067.)  "An order to show cause under section 1172.6 does not vacate the petitioner's sentence but . . . sets in motion proceedings to determine whether the petitioner is entitled to vacatur and resentencing."  (*People v. Guillory* (2022) 82 Cal.App.5th 326, 335-336.)  Thus, many federal constitutional protections do not apply to this process, including the right to counsel, the right to trial by jury, the right against double jeopardy, and the right against self-incrimination.  (See *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588-589 [list of cases].)

But section 1172.6 also provides a procedure for resentencing and requires the trial court to act as a fact finder to determine whether the petitioner is guilty under current law.  (*People v. Rodriguez, supra*, 103 Cal.App.5th at p. 457.)  This creates a liberty interest.  As our Supreme Court has observed, " '[i]n an appeal from a denial of a section [1172.6] petition, the private interests at stake are the liberty interests of the person who may be in custody and seeking release.' "  (*People v. Delgadillo* (2022) 14 Cal.5th 216, 229.)  "When . . . a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication."  (*Swarthout v. Cooke* (2011) 562 U.S. 216, 220.)  This protection applies to prisoners when state law creates a liberty interest in parole.  (*Swarthout*, at pp. 219-220; see *Betterman v. Montana* (2016) 578 U.S. 437, 448 ["After conviction, a defendant's due process right to liberty, while diminished, is still present."].)  It equally should apply to prisoners when state law creates a liberty interest in resentencing.  The arbitrary denial of a state-created right is a denial of due process.  (*People v. Marshall* (1996) 13 Cal.4th 799, 850 [the trial court's error in failing to submit

11

the special circumstance allegation to the jury pursuant to section 190.4 implicated the federal due process right].)  Here, the trial court erroneously stated it was "bound" by the jury's finding that defendant personally used a firearm during the robbery and murder. This error implicates the federal due process right.

The People contend that defendant is not entitled to independent fact finding on his use of firearm because that finding is unnecessary to find him guilty of murder, as Senate Bill No. 1437 made no changes to the firearm enhancement.  We disagree.  It is true that section 1172.6 does not provide for a whole new trial and the trial court's factual determinations are limited to issues made relevant by the changes effected by Senate Bill No. 1437.  (*People v. Rodriguez, supra*, 103 Cal.App.5th at p. 457.)  But "[e]vidence that defendant personally used a [weapon] was highly relevant to show that he was guilty of murder."  (*People v. Santamaria* (1994) 8 Cal.4th 903, 922.)

B.      *Harmless Error Analysis*

Because we conclude the trial court's error implicated federal due process, we evaluate the error under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 and conclude it was harmless beyond a reasonable doubt.

The error was harmless beyond a reasonable doubt because right after the court stated it was "bound" by the jury's finding that defendant personally used a firearm, it conducted a separate totality of the evidence analysis and found that defendant was the actual killer.  Specifically, it considered undisputed evidence that the Cobray was defendant's gun, that defendant carried the Cobray on the day of the killing, that defendant was the driver immediately after the killing, and that Phanvongsa died from a gunshot wound from the Cobray.  It credited Christopher's testimony that the person with the Cobray got in the driver side of the red car.  And it discredited defendant's and Galvan's testimonies that somebody other than defendant took the Cobray into the convenience store.  After recounting all this evidence, the trial court stated it "finds the totality of the evidence proves beyond a reasonable doubt that [defendant] was the actual

12

killer . . . ." We therefore conclude the trial court's error stating it was bound by the jury's finding that defendant personally used a firearm was harmless beyond a reasonable doubt.

It flows then that even without giving preclusive effect to the jury's finding that defendant personally used a firearm, there was substantial evidence that defendant was the actual killer.

DISPOSITION

The order is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
HULL, Acting P. J.

/s/
RENNER, J.

13